

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-3-2008

# USA v. Cardona-Rosario

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1413

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Cardona-Rosario" (2008). *2008 Decisions*. Paper 908.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/908

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 06-1413

———

UNITED STATES OF AMERICA

v.

ORLANDO CARDONA-ROSARIO,
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cr-00595-5)
District Judge: Honorable John C. Lifland

———

Submitted Under Third Circuit LAR 34.1(a)
June 24, 2008

Before: SLOVITER, BARRY, and ROTH, Circuit Judges

(Filed: July 3, 2008)

———

OPINION

———

SLOVITER, Circuit Judge.

Orlando Cardona-Rosario appeals the judgment of the District Court following a jury trial on drug conspiracy charges. He argues that the District Court (1) abused its discretion in admitting evidence of a past drug conviction and allowing hearsay testimony by a police officer about Cardona-Rosario's prior conviction; and (2) erred in instructing the jury that Cardona-Rosario could be convicted if the jury found a "slight connection" between him and the conspiracy. We will affirm.

**I.**

On August 12, 2004, Cardona-Rosario and four co-conspirators flew from Puerto Rico to New York City to retrieve sixty-five kilograms of cocaine they had previously shipped to Philadelphia. One of the co-conspirators, Eric Fuentes, later identified Cardona-Rosario as the owner of the cocaine that had been hidden inside furniture and smuggled into the United States. Once in the United States, one of the other co-conspirators contacted Fuentes who was accompanied by a confidential informant known as "Danny." Danny, unknown to Fuentes, was working for the Drug Enforcement Administration.

On August 13, 2004, Cardona-Rosario and the other co-conspirators traveled to Philadelphia from New York (followed by law enforcement) to retrieve the cocaine. Cardona-Rosario and Fuentes met co-conspirator Hector Rosado-Figueroa in a parking lot and followed him to the apartment where the cocaine was stored. Cardona-Rosario and

three co-conspirators were arrested later that evening after stopping at a gas station in New Jersey, and Fuentes was arrested at his home with the sixty-five kilograms of cocaine that had been retrieved from Rosado-Figueroa's apartment. Rosado-Figueroa was arrested the following day.

Cardona-Rosario, together with five co-defendants, was indicted on August 23, 2004 for conspiracy to distribute and possess with intent to distribute more than fifty kilograms of cocaine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii), and in violation of 21 U.S.C. § 846. The District Court granted the government's pre-trial motion seeking to introduce evidence of Cardona-Rosario's 1993 conviction in Puerto Rico for possession of heroin with intent to distribute.[1] All of the defendants other than Cardona-Rosario pled guilty. He was tried from August 4 to August 10, 2005, during which the jury heard testimony from a police officer involved in the arrest leading to Cardona-Rosario's 1993 conviction. The jury returned a verdict of guilty, and Cardona-Rosario

---

[1] In its original motion, the government stated that Cardona-Rosario had previously been convicted of a cocaine offense, but it filed a supplemental motion shortly thereafter to explain that Cardona-Rosario was charged with cocaine and heroin possession but only pled guilty to heroin possession. Although the District Court perpetuated this error in its order granting the motion in limine, Cardona-Rosario did not challenge the government's motion on that ground nor did he object to that aspect of the Court's order when the evidence was introduced at trial. In fact, he offered to stipulate to the conviction.

was sentenced to 324 months imprisonment.[2]

## II.

Cardona-Rosario argues that the District Court erred in finding that the risk of unfair prejudice arising from his prior drug conviction, see Fed. R. Evid. 404(b), was outweighed by the probative value of the prior conviction evidence under Rule 403 of the Federal Rules of Evidence. Rule 403 provides that "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. We review a district court's Rule 403 balancing for abuse of discretion, United States v. Givan, 320 F.3d 452, 461 (3d Cir. 2003), and may reverse that court's determination only when it is "arbitrary or irrational," United States v. Universal Rehab. Servs. (PA), Inc., 205 F.3d 657, 665 (3d Cir. 2000) (en banc) (citation and internal quotation marks omitted).

Cardona-Rosario contends that the District Court abused its discretion by failing to properly consider the length of time between the crimes, the government's need for the evidence, and the dissimilarity between the relevant conduct underlying the 1993 and 2005 convictions. These arguments are unavailing.

Although twelve years separated Cardona-Rosario's 1993 conviction in Puerto Rico and the 2005 conviction, Rule 404(b) of the Federal Rules of Evidence does not

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

establish a maximum time interval between the prior conviction and the charged conduct as a determinant for admissibility of the prior conviction. In its ruling, the District Court explained that it was admitting evidence of the prior conviction "to prove the defendant's knowledge and to rebut his claim of ignorance." App. at 3. We have sustained the introduction of such evidence for identical reasons even where the interval was a decade. In United States v. Lopez, 340 F.3d 169, 171, 174 (3d Cir. 2003), we affirmed the admission of a 1991 conviction at a 2001 trial "for the purpose of rebutting defense claims of innocent association, and to prove criminal intent." Similarly, in this case we "cannot say that the District Court abused its discretion in admitting evidence of [Cardona-Rosario's] prior conviction" solely on the basis of the passage of time following that conviction. Id. at 174.

Cardona-Rosario also argues that the government did not seriously need evidence of the prior conviction to prove its case. This argument must also fail, as Cardona-Rosario, who indisputably traveled from Puerto Rico to Pennsylvania with several of his co-conspirators in the days preceding the transaction, continued to assert an innocent association defense throughout his trial, culminating with the contention during his closing argument that he, as opposed to his co-conspirators, "had nothing to do with the drug transaction." Supp. App. at 453.

Finally, Cardona-Rosario argues that the two crimes are dissimilar. Although the District Court erroneously stated in its pre-trial order that Cardona-Rosario had pled

guilty to possession with intent to distribute cocaine, rather than heroin, we have noted that the fact that different drugs were involved in two separate crimes is "of limited significance" where the prior act was admitted to prove knowledge, and additionally that "[i]t is not as if dealing in cocaine and heroin are mutually exclusive endeavors." Givan, 320 F.3d at 462. Furthermore, the two incidents are not so dissimilar as to compel a conclusion that the District Court abused its discretion in admitting Cardona-Rosario's prior conviction for the limited purposes indicated.

**III.**

Cardona-Rosario also challenges the admissibility of trial testimony offered by Daniel Rivera, a Puerto Rican police officer who participated in Cardona-Rosario's 1993 arrest. When the prosecutor asked Rivera about information that a confidential informant had given him regarding the group in Puerto Rico with which Cardona-Rosario was involved, Cardona-Rosario objected on hearsay grounds. At a sidebar conference, Cardona-Rosario offered to stipulate to the prior conviction, but objected to Rivera's testimony as to what the informant said. The District Court sustained the hearsay objection, but noted that the parties had "essentially an agreement that the subject matter you are now pursuing is not objectionable" and instructed the prosecutor to finish her line of questioning "as quickly as you can." App. at 8. Rivera proceeded to testify about an undercover officer's involvement with this group and about the circumstances of Cardona-Rosario's arrest.

6

Although defense counsel did not raise another objection during the government's direct examination, Rivera admitted on cross-examination that parts of his prior testimony were based on information given to him by someone else. Defense counsel did not request that that testimony be stricken from the record. On redirect, over Cardona-Rosario's objection, Rivera testified that based on his involvement in the investigation, he believed Cardona-Rosario to be the leader of the organization involved in the 1993 crimes. The Court then issued a limiting instruction, stating that the evidence was admitted only for the limited purpose of determining whether Cardona-Rosario had the "requisite intent and knowledge" with respect to the conspiracy charge. App. at 20.

On appeal, Cardona-Rosario argues that the District Court erred in admitting hearsay testimony that was not based on Rivera's personal knowledge, in violation of Rules 802 (hearsay) and 602 (lack of personal knowledge) of the Federal Rules of Evidence.[3] Because the only hearsay objection raised by Cardona-Rosario was sustained and he did not object to any of Rivera's subsequent testimony on hearsay grounds or request that that testimony be stricken from the record, we must consider whether the

---

[3] Cardona-Rosario also contends that it was error to admit this testimony because the District Court's Rule 404(b) order permitted evidence of the conviction, but not necessarily testimony about the underlying conduct. However, the government's motion in limine was not so limited, and Cardona-Rosario never objected at trial that the government or the District Court misconstrued the extent of the order. It was not plain error to admit Rivera's testimony per se.

District Court's failure to strike Rivera's testimony sua sponte constitutes "plain error that affects substantial rights . . . ." Fed. R. Crim. P. 52(b).

It is undisputed that Rivera was a member of the law enforcement team that monitored the Puerto Rico drug organization and arrested Cardona-Rosario for his role in that organization. Therefore, Rivera had adequate personal knowledge to testify about the circumstances of Cardona-Rosario's arrest, in which he participated. To the extent that the District Court may have erred by admitting any testimony that was not within Rivera's personal knowledge, the government has suggested a "possible legitimate reason" for that testimony, i.e., as context for Rivera's subsequent actions. United States v. Rivas, 493 F.3d 131, 137 (3d Cir. 2007); see also United States v. Price, 458 F.3d 202, 205-06 (3d Cir. 2006) (recognizing "background information" as a proper non-hearsay purpose). Therefore, any error was not plain. Rivas, 493 F.3d at 137. Moreover, Cardona-Rosario "bears the burden of demonstrating that the purported error affected the outcome of the trial, and he has not done so." Id. (citing United States v. Olano, 507 U.S. 725, 734-35 (1993)). The government offered significant co-conspirator testimony and corroborating evidence of Cardona-Rosario's role in the 2004 conspiracy, Rivera's testimony was not directed at the substantive conduct at issue in Cardona-Rosario's trial, Cardona-Rosario offered to stipulate to the admission of his prior conviction, and Rivera's testimony was followed by a comprehensive limiting instruction. "We are not convinced that [any of Rivera's challenged] testimony affected the outcome of the trial, so any error cannot be a

8

ground for reversal." Id.

## IV.

Finally, Cardona-Rosario argues that the District Court's jury instruction on conspiracy, to which he did not object, constituted plain error. Specifically, Cardona-Rosario challenges the District Court's statement that, "once a conspiracy is established, the guilt of a defendant can be established by evidence tending to show beyond a reasonable doubt that he had at least a slight connection to it and participation in it." App. at 92.

First, Cardona-Rosario argues that the "slight connection" instruction too closely resembles the "slight evidence" instruction that we rejected in United States v. Cooper, 567 F.2d 252, 253 (3d Cir. 1977) ("Clearly, it would be reversible error to charge a jury that, once the government has shown the existence of a conspiracy, it may connect a particular defendant to it by 'slight evidence,' rather than by evidence proving the connection beyond a reasonable doubt.") (citation omitted). However, the jury instruction in this case uses the phrase "slight connection," rather than "slight evidence," and the District Court specifically stated that this slight connection and participation must be proven by a reasonable doubt. Indeed, at least two of our sister circuits have concluded that the phrase "slight connection" addresses the defendant's role, while "slight evidence" addresses the standard of proof. See United States v. Anderson, 189 F.3d 1201, 1207 (10th Cir. 1999); United States v. Dunn, 564 F.2d 348, 357 (9th Cir. 1977). We cannot

9

conclude that this aspect of the District Court's instruction was error, let alone plain error.

Second, Cardona-Rosario challenges the portion of the instruction that discusses evidence "<u>tending</u> to show beyond a reasonable doubt" a connection to and participation in the conspiracy. App. at 92 (emphasis added). However, the District Court emphasized at several points in its instruction that the government is required to prove the elements of conspiracy beyond a reasonable doubt and provided the jury with a lengthy definition of reasonable doubt. The language in question must be viewed in the context of the entire instruction. <u>See</u> <u>United States v. Coyle</u>, 63 F.3d 1239, 1245 (3d Cir. 1995). When evaluating the entire instruction, including the District Court's clear emphasis on the government's burden to prove the elements of the conspiracy beyond a reasonable doubt, we cannot conclude that the Court committed error.

**V.**

For the reasons set forth, we will affirm the judgment of the District Court.